2) Caption, civil cases



COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



MICHAEL JAMES PERL,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-02-00047-CR



Appeal from the


Criminal District Court No. 4


of Dallas County, Texas 


(TC# F-0122788-UK) 



O P I N I O N


 Appellant, Michael James Perl, pled not guilty, but a jury convicted him of aggravated
kidnaping of the minor, A.J. The jury assessed punishment at ten years' confinement. At the same
time, the jury acquitted appellant of aggravated kidnaping of Natalie Marshall, mother of A.J. 
Appellant presents three issues for review. He contends there was: (1) factually insufficient
evidence to prove kidnaping by "secreting" the victim or by "using or threatening deadly force;" (2)
factually insufficient evidence to prove aggravated kidnaping by "intent to terrorize" or by "use or
exhibit of a deadly weapon;" and (3) ineffective assistance of counsel for failing to request a jury
instruction regarding voluntarily releasing the victim in a safe place. We affirm.


I

 Natalie Marshall, one of the complainants, was an unmarried 27-year-old topless dancer. She
is the mother of A.J., a 21-month-old, at the time of the incident. Appellant loaned $210 to A.J.'s
father, Jorge. Jorge, appellant, and Marshall were social acquaintances and the loan was made
Saturday, April 7, 2001, at a birthday party for one of the children. The loan by appellant was
supposed to be repaid the following Monday, April 9, but was not. On April 12, appellant and his
resident girlfriend Hutchison, went to Marshall's apartment and asked her to come clean their house. 
Marshall, who had performed these services before, agreed. The trio went to a sex shop for toys,
then on to appellant's home. Hutchison told Marshall to have sex with appellant; she left and
returned. Drug use and consensual sex followed. Thereafter, Marshall phoned Jorge to come get
her, because appellant and Hutchison would not take her home. About 9:30 that evening, Jorge
arrived, but appellant would not open the gate to allow Jorge on the property, when Jorge did not
repay the loan. Appellant then returned to the house, yanked A.J. from Marshall, and informed her
she could leave, but the baby had to stay because Jorge had not paid. Marshall went outside, and was
forced to leave the baby in the house. She told Jorge the baby could not leave until he repaid
appellant. Accordingly, she would remain at the house with the child. Marshall testified appellant
stood behind her with a "big black" .45 pistol. Hutchison also had a .38 pistol. (1)

 After Jorge left, the three adults had sex, but this time Marshall thought she would not be
allowed to remain with the child if she did not participate. After stalling, she complied. Thereafter,
police arrived. Appellant and Hutchison flushed drugs, hid firearms, and derived a story. Marshall
and the child were then allowed to leave the house. Appellant and Hutchison were arrested and the
police searched the house. A brief search produced a rifle, a .32 pistol, and ammunition for a .32 and
.45. No .45 pistol was found. Further factual recitation will appear in our analysis as necessary.

II

 In determining the factual sufficiency of the elements of an offense, the reviewing court
"'views all the evidence . . . in a neutral light, and sets aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.'" Johnson v. State, 23
S.W.3d 1, 7 (Tex. Crim. App. 2000) (quoting Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996)). The court reviews the evidence weighed by the jury that tends to prove the existence of the
elemental fact in dispute and compares it with the evidence that tends to disprove that fact. Id. We
are authorized to disagree with the fact finder's determination. Id. (citing Clewis, 922 S.W.2d at
133). This review, however, must employ appropriate deference to prevent an appellate court from
substituting its judgment for that of the fact finder, and any evaluation should not substantially
intrude upon the fact finder's role as the sole judge of the weight and credibility given to witness
testimony. Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). The complete and correct
standard a reviewing court must follow to conduct a Clewis factual sufficiency review of the
elements of a criminal offense, asks whether a neutral review of all the evidence, both for and against
the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in
the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed
by contrary proof. Johnson, 23 S.W.3d at 11.

III

 Kidnaping is committed by the intentional or knowing abduction of another. Tex. Pen. Code
Ann. § 20.03(a) (Vernon 1998). "Abduct" means to restrain with the intent to prevent liberation (1)
by secreting and holding another in a place where he was not likely to be found or (2) by using or
threatening to use deadly force. Id. § 20.01(2)(A) & (B). Secreting and deadly force are alternative
components of the specific intent element of kidnaping. King v. State, 961 S.W.2d 691, 693-94
(Tex. App.--Austin 1998, pet. ref'd). The charge presented threat of deadly force as the only method
of abduction. And because the evidence is factually sufficient to support a finding on this element,
we need not address the statutory alternative of secreting.

 Appellant argues no witness testified that any words that threatened deadly force were used. (2) 
The only evidence of deadly force was Marshall's testimony about the .45 pistol and that she felt
threatened. He avers "[b]ut, most importantly for this issue, her testimony about the existence of a
.45 pistol is contradicted by several other witnesses . . . ." It is true that Marshall alone saw the .45,
and the police search produced no such weapon. However, .45 ammunition was found and the police
search was not thorough. Appellant correctly argues that Marshall's testimony and credibility may
have been impeached. James Fallon testified Marshall had a bad reputation for truthfulness, and
contradicted her claim about no prior three-way sex. Appellant additionally argues that given
Marshall's financial dependence on Jorge, her drug use, her sexual encounters, and even the jury
acquittal of appellant on the charge of kidnaping Marshall, "clearly demonstrate Marshall lied about
the abduction in order to avoid trouble with her boyfriend Jorge . . . . "

 Evidence supporting the element of using or threatening deadly force includes the fact the
child was yanked from Marshall's arms, the child and Marshall were locked in the house, and the
testimony appellant and his girlfriend followed Marshall to see Jorge with weapons. Earlier,
appellant had taken Marshall to the barn to show her his rifle. He fired the weapon three or four
times, causing enough commotion that police were called. Marshall was scared and convinced the
child would not be released until the loan was repaid. That others may not have seen appellant's
pistol is mitigated by the darkness of the hour (about 9:30 p.m.) and consistent with Marshall's claim
the pistol was pointed at the ground. Hutchinson's version contrary to Marshall's is undermined by
the fact that she was also charged with the same crime.

 Our highest court has addressed a similar case involving the question whether that jury could
rationally have found a restraint with intent to prevent liberation "'by using or threatening to use
deadly force namely, a firearm.'" Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). 
There, the court held an abduction is a continuous, ongoing event, without time limit so the
abduction did not cease after a single event but continued throughout the entire transaction. See id. 
Because there was testimony that the defendant had a weapon that night, (3) the jury could have
believed that the defendant had the pistol and used it during the course of the abduction to prevent
the complainants' liberation. Id. There the State's witness was also impeached, but the court noted
it is the jury's responsibility to assess credibility. See id.

 Here, too, conflicting testimony boiled downed to a question of credibility. Appellant asks
us to find Marshall lied. We decline. Ours is not to substantially intrude upon the fact finder's role
as the judge of the weight and credibility given to witness testimony. Jones, 944 S.W.2d at 648. 
Appellant's first issue is overruled.

 In his second issue, appellant argues factual insufficiency to prove aggravated kidnaping. 
A kidnaping can be aggravated when one of the six aggravating factors of Tex. Pen. Code Ann. §
20.04(a) is alleged and proved. A kidnaping can also be aggravated when a person knowingly or
intentionally abducts another and a deadly weapon is used or exhibited during the commission of the
offense. Id. § 20.04(a)(b). The jury is authorized to find appellant guilty of aggravated kidnaping,
if appellant either abducted the baby with the intent to terrorize Marshall, or if appellant used or
exhibited a deadly weapon during the abduction. Because there is sufficient evidence of intentional
abduction and use or exhibition of a deadly weapon, we need not address appellant's admittedly
stronger argument involving intent to terrorize Marshall. In his argument under the use or exhibition
of a firearm, appellant reiterates his sufficiency argument under the first issue. He maintains the
evidence of the missing .45 is insufficient, contradicted by every witness other than Marshall, and
the police failed to recover any .45. As we observed under appellant's first issue, there was evidence
of .45 ammunition, direct eyewitness testimony about a big black gun, and appellant's statement to
Marshall the weapon was a .45. The presence and use of other firearms, the interest of the other
witnesses, and darkness impeach the contrary evidence, and again, boil the issue down to one of
credibility. See Jones, 944 S.W.2d at 648. For the same reasons we deny appellant's first
sufficiency issue, we likewise overrule his second.

 In his third and final issue, appellant contends his trial counsel was ineffective for failing to
request a jury instruction regarding voluntarily releasing the victim in a safe place. Texas courts
adhere to the United States Supreme Court's two-pronged Strickland (4) test to determine whether
counsel's representation was inadequate thereby violating a defendant's Sixth Amendment right to
counsel. Thompson v. State, 9 S.W.3d 808, 812-13 (Tex. Crim. App. 1999) (citing Hernandez v.
State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). The defendant must first show that counsel's
performance was deficient, i.e., that his assistance fell below an objective standard of reasonableness. 
McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). Second, assuming appellant has
demonstrated deficient assistance, it is necessary to affirmatively prove prejudice. Id. at 500. In
other words, appellant must show a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different.

 We first review whether or not trial counsel's performance was deficient. Appellant argues
the evidence shows the victim was voluntarily released in a safe place. See Tex. Pen. Code Ann.
§ 20.04(d) (Vernon 1998). Appellant cites Posey v. State, 966 S.W.2d 57, 63 (Tex. Crim. App.
1998). Posey merely says the 1995 legislative change to section 20.04(d) of the Penal Code now
requires the defendant to raise the issue by objecting to the charge and does not require the court to
issue the instruction on "release in a safe place," sua sponte. Id. We agree. Next, appellant argues
from Lavarry, the meaning of "safe place." Lavarry v. State, 936 S.W.2d 690, 696 (Tex. App.--Dallas 1996, pet. dism'd). These factors include remoteness, proximity of persons who could assist,
time, climate, and others. Id. According to the argument, because the victim was released unharmed
into the care of police in broad daylight, appellant was therefore entitled to the instruction on "release
in a safe place."

 The State counters that no instruction was necessary because there is no evidence that the
release was voluntary. We agree. In Oestrick v. State, 939 S.W.2d 232 (Tex. App.--Austin 1997,
pet. ref'd), the Austin court held that the ordinary meaning of "voluntary" in the phrase "voluntary
release in a safe place" includes acting of oneself; not constrained, impelled or influenced by
another; resulting from free choice, without compulsion or solicitation. Id. at 239. In Oestrick, the
defendant was pursued by police, left the victim in his truck, and fled into a nearby house where he
held off police. Id. We believe the State's argument is compelling because the record does not
disclose that the release of the victim to police surrounding appellant's house resulted from the free
choice or volition of appellant. Carreon v. State, 63 S.W.3d 37, 40 (Tex. App.--Texarkana 2001,
pet. ref'd). To the contrary, the evidence shows the victim was not released until shortly before
appellant's arrest, and only after he was surrounded by police officers for some three hours. The
police spoke on a bullhorn, Hutchinson went outside, then came back and said the police wanted to
see appellant, Marshall, and the child victim. Only at that point did Marshall pick up the baby and
walk to the police car. Because trial counsel's assistance was not deficient, we need not address the
prejudice prong of Strickland. Appellant's third issue is overruled.

 The judgment of the trial court is affirmed.


 DON WITTIG, Senior Justice

May 1, 2003


Before Panel No. 5

McClure, Chew, and Wittig, JJ.

(Wittig, J., sitting by assignment)


(Do Not Publish)

1. This pistol was variously described as a .38 or .32.
2. Because appellant cites no authority that any particular words are necessary to threaten or
use deadly force, we interpret his argument as merely pointing to the important question of
whether or not the .45 pistol was present and in use. No particular words, or indeed any words,
are required by the statute.
3. In Curry, while the sufficiency analysis itself delineated weaker facts than appellant's
case, the weapon had also been used earlier in a homicide.
4. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).